1  GIBSON, DUNN & CRUTCHER LLP
   ETHAN D. DETTMER, SBN 196046
2  EDettmer@gibsondunn.com
   555 Mission Street, Suite 3000
3  San Francisco, California 94105-2933
   Telephone: 415.393.8200
4  Facsimile: 415.393.8306

5  HILLARY N. BUNSOW, SBN 278719
   HBunsow@gibsondunn.com
6  333 South Grand Avenue
   Los Angeles, California 90071-3197
7  Telephone: 213.229.7000
   Facsimile: 213.229.7520

8

9  Attorneys for FINANCIAL INDUSTRY
   REGULATORY AUTHORITY, INC. (FINRA)

10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

14                    **WESTERN DIVISION**

15

16  JOHN DOE,                          CASE NO. 2:13-CV-6436-DDP (ASx)

17          Plaintiff,                 **DEFENDANT'S MEMORANDUM OF
                                        POINTS AND AUTHORITIES IN
18      v.                             OPPOSITION TO PLAINTIFF'S
                                        MOTION TO REMAND AND FOR
19  FINANCIAL INDUSTRY                 ATTORNEY FEES**
    REGULATORY AUTHORITY, INC.,
20  and Does 1 to 10, inclusive,       [Proposed] Order lodged concurrently
                                        herewith
21          Defendants.
                                        Hearing
22                                      Date: November 18, 2013
                                        Time: 10:00 a.m.
23                                      Place: 312 N. Spring St., Ctrm. 3
                                        Judge: Hon. Dean D. Pregerson
24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ..........................6

II.   PROCEDURAL BACKGROUND ...............................................7

III.  RELEVANT FACTUAL AND LEGAL BACKGROUND ........................7

    A.    FINRA Regulates The Securities Markets Under Congressional
       Mandate And SEC Supervision ...........................................7

    B.    FINRA's SEC-Approved Reporting Requirements, The CRD
       System, And BrokerCheck ..................................................9

    C.    Doe Alleges FINRA Violated Its SEC-Approved Rules And
       Challenges The Validity of Those Rules ............................12

       a.    The Relevant Exchange Act Provisions And FINRA Rules ...12

       b.    Doe Claims That FINRA Violated Its Rules By Listing
          Disclosure #1 on BrokerCheck. ................................13

       c.    Doe Challenges FINRA's SEC-Approved Record-Keeping
          And Reporting Obligations. .....................................14

       d.    Doe Alleges Other Violations Of FINRA Rules, Which Are
          Subject To Exclusive Federal Jurisdiction. .............16

IV.   ARGUMENT...................................................................17

    A.    This Court Has Exclusive Jurisdiction Under The Exchange Act.....17

    B.    Doe's Claims Raise A Substantial Question Of Federal Law ..........20

    C.    Attorney's Fees Are Not Appropriate................................23

V.    CONCLUSION ...............................................................24

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*American Benefits Group, Inc. v. NASD,*
1999 U.S. Dist. LEXIS 12321 (S.D.N.Y. Aug. 10, 1999) ...................................17, 21

*Avila v. Willits Environmental Remediation Trust,*
2008 WL 360858 (N.D. Cal. Feb. 6, 2008) ................................................................7

*Charles Schwab & Co., Inc. v. FINRA,*
861 F. Supp. 2d 1063 (N.D. Cal. 2012) ...........................................................17, 21

*Cook v. NASD Regulation, Inc.,*
31 F.Supp. 2d 1245, 1248-49 (D. Colo. 1998) ................................................17, 21

*D'Alessio v. New York Stock Exchange, Inc.,*
258 F.3d 93 (2d Cir. 2001).........................................................................................23

*Dennis v. Hart,*
724 F.3d 1249 (9th Cir. 2013)...........................................................................19, 20

*Desiderio v. NASD,*
191 F.3d 198 (2d Cir. 1999) .......................................................................................8

*Dobbins v. NASD,*
2007 WL 2407081 (N.D. Ohio Aug. 22, 2007) ............................................17, 18, 21

*Exxon Mobil Corp. v. Allapattah Servs., Inc.,*
545 U.S. 546 (2005) ..................................................................................................20

*Friedlander v. Troutman, Sanders, Lockerman & Ashmore,*
788 F.2d 1500 (11th Cir. 1986)................................................................................22

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manuf'g,*
545 U.S. 308 (2005).......................................................................................6, 20, 22

*Gunn v. Minton,*
133 S.Ct. 1059 (2013) .......................................................................................20, 23

*Hawkins v. NASD,*
149 F.3d 330 (5th Cir. 1998).....................................................................................18

*Hibbard Brown & Co., Inc. v. NASD,*
1994 WL 827778 (D. Del. Oct. 6, 1994) ............................................................13, 19

*In re Facebook, Inc., IPO Securities and Derivative Litigation,*
922 F. Supp. 2d 475 (S.D.N.Y. 2013)........................................................................22

*Kurz v. Fid. Mgmt. & Research Co.,*
556 F.3d 639 (7th Cir. 2009)......................................................................................8

Gibson, Dunn &
Crutcher LLP

3

*Lippitt v. Raymond James Financial Services, Inc.*,
   340 F.3d 1033 (9th Cir. 2003)...............................................................18, 19

*Lowe v. NASD Regulation, Inc.*,
   1999 U.S. Dist. LEXIS 19489 (D.D.C. Dec. 14, 1999)...........................................19

*Lussier v. Dollar Tree Stores, Inc.*,
   518 F.3d 1062 (9th Cir. 2008)...............................................................24

*Manning v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   2013 WL 1164838 (D.N.J. Mar. 20, 2013)......................................19, 21, 22

*Marin General Hospital v. Modesto & Empire Traction Company*,
   581 F.3d 941 (9th Cir. 2009)...............................................................19

*Martin v. Franklin Capital Corp.*,
   546 U.S. 132 (2005)...............................................................23, 24

*Matsushita Electric Industrial Co., Ltd. v. Epstein*,
   516 U.S. 367 (1996)...............................................................19

*Matyuf v. NASD DR, Inc.*,
   2004 U.S. Dist. LEXIS 25174 (W.D. Pa. Oct. 4, 2004) ...................................17, 21

*Merrell Dow Pharms. Inc. v. Thompson*,
   478 U.S. 804 (1986) (citation omitted)...............................................................20

*Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.*,
   726 F.3d 8 (1st Cir. 2013)...............................................................23

*NASDAQ OMX Group, Inc. v. UBS Securities LLC*,
   2013 WL 3942948 (S.D.N.Y. June 18, 2013)...............................................................22

*Sacks v. Dietrich*,
   663 F.3d 1065 (9th Cir. 2011)...........................................................6, 17, 18, 23

*Spalding v. FINRA*,
   2013 WL 1129396 (N.D. Ga. March 19, 2013)...............................................................20

*Sparta Surgical Corp. v. NASD*,
   159 F.3d 1209 (9th Cir. 1998)......................................................17, 18, 19, 24

*Verizon Maryland, Inc. v. Global NAPS, Inc.*,
   377 F.3d 355 (4th Cir. 2004)...............................................................23

*Warren v. Baker*,
   2007 WL 4111428 (M.D. Pa. Nov. 16, 2007) ...............................................................7

*Whitehall Wellington Investments, Inc. v. NASD*,
   2000 WL 1846129 (S.D. Fla. Dec. 7, 2000) ...............................................................19

Gibson, Dunn &
Crutcher LLP

## Statutes and Rules

10 CCR § 260.210....................................................................................10

15 U.S.C. § 78a........................................................................................8

15 U.S.C. § 78aa...............................................................................passim

15 U.S.C. § 78o.................................................................................passim

15 U.S.C. § 78s.........................................................................8, 9, 13, 16

15 U.S.C. § 78y......................................................................................17

28 U.S.C. § 1331.........................................................................6, 12, 20

FINRA Rule 12805 ................................................................................16

FINRA Rule 2080 ..........................................................................11, 12

FINRA Rule 8312 ..........................................................................passim

## SEC Releases

SEC Release No. 34-59916, 74 Fed. Reg. 23750 (May 20, 2009)..................9

SEC Release No. 34-52544, 70 Fed. Reg. 58764 (Oct. 7, 2005) ..................9

SEC Release No. 34-48161, 68 Fed. Reg. 42444 (July 17, 2003) ..................9

SEC Release No. 34-45531, 67 Fed. Reg. 11735 (March 15, 2002) ..............9

SEC Release No. 34-48933, 68 Fed. Reg. 74667 (Dec. 24, 2003)...............12

SEC Release No. 11424, 1975 SEC Lexis 1592 (May 16, 1975) ..................9

SEC Release No. 13679, 1977 SEC Lexis 1409 (June 27, 1977) .................9

SEC Release No. 47435, 68 Fed. Reg. 11435 (March 10, 2003)..................11

SEC Release. No. 65643 (Oct. 27, 2011) ..............................................8

Gibson, Dunn & Crutcher LLP

## MEMORANDUM OF POINTS AND AUTHORITIES
## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

John Doe claims that the Financial Industry Regulatory Authority ("FINRA") violated its own Securities and Exchange Commission-approved rules in "refus[ing] to remove" (Compl. ¶ 34) various customer complaints from his public record on the Central Registration Depository ("CRD") – a database maintained by FINRA pursuant to Congressional mandate, *see* 15 U.S.C. § 78o-3(i)(1)(A).  Furthermore, Mr. Doe claims that the FINRA reporting requirements that gave rise to his challenged CRD records are themselves improper, even though the FINRA rules in question were approved by the SEC after public notice and comment, and in order to carry out Congressional direction regarding regulation of the securities markets.  Thus jurisdiction is proper both because this Court has exclusive jurisdiction of alleged violations of the Exchange Act "or the rules and regulations thereunder" (including FINRA rules, 15 U.S.C. § 78aa; *Sacks v. Dietrich*, 663 F.3d 1065, 1069 (9th Cir. 2011)); and because this Court has jurisdiction over claims that "arise under" federal law, 28 U.S.C. § 1331; *Grable & Sons Metal Products*, *Inc. v. Darue Eng'g & Manuf'g*, 545 U.S. 308, 312 (2005).

Mr. Doe seeks to expunge at least seven customer complaints from his securities industry registration record, which resides on the CRD electronic database.  CRD is owned and operated by FINRA, pursuant to Congressional mandate, and on behalf of and pursuant to agreements with the fifty states' securities commissions.  CRD serves three important purposes: (1) it allows investors to obtain information about a broker with whom they do business or contemplate doing business; (2) it allows prospective employers to obtain information important in considering whether to employ a broker; and (3) it provides securities regulators (including the California Department of Corporations) with a critical regulatory tool in overseeing the activities of brokers.

At bottom, jurisdiction is appropriate here both because Mr. Doe premises his state law claims on alleged violations by FINRA of the federal securities laws and the

FINRA rules; and because Mr. Doe challenges FINRA's rules (approved by the SEC) that require securities firms to report certain types of customer complaints, and require FINRA to maintain these complaints on a publicly available database.  As these issues involve the interpretation and application of federal law, FINRA properly removed the Complaint to this Court.

## II.     PROCEDURAL BACKGROUND

Mr. Doe[1] filed a Complaint against FINRA in the Los Angeles Superior Court, seeking declaratory relief and expungement.  FINRA was served with the Complaint on August 2, 2013, and timely removed the Complaint to this Court on September 3, 2013.  On October 1, 2013, Plaintiff filed a Motion to Remand and for Attorney Fees.

## III.     RELEVANT FACTUAL AND LEGAL BACKGROUND

### A.     FINRA Regulates The Securities Markets Under Congressional Mandate And SEC Supervision

FINRA is a private, not-for-profit Delaware corporation,[2] and a self-regulatory organization ("SRO") registered with the SEC as a national securities association

---

[1]  Mr. Doe has refused to disclose his name on the asserted grounds that his petition for expungement would be frustrated by using his name in a public court filing. Since FINRA cannot review or evaluate Mr. Doe's registration record without knowing his identity, the parties attempted to negotiate a non-disclosure agreement. But FINRA and Mr. Doe have been unable to reach agreement on this issue.

[2]  Mr. Doe relies on ad hominem attacks against FINRA.  *See* Motion to Remand, at 6-7.  This is particularly inappropriate as it is not disputed (or relevant) that FINRA is a private company (*see* Dkt. 1 at ¶ 4), or that earns money on investments.  And FINRA publicly discloses its executives' pay, which is also wholly irrelevant here. Finally, Mr. Doe's recitation of unrelated SEC issues is nothing other than an effort to sully FINRA's reputation with irrelevancies.  Mr. Doe's attacks are inappropriate and should be disregarded.  *See Avila v. Willits Evntl. Remediation Trust*, 2008 WL 360858, at *16 (N.D. Cal. Feb. 6, 2008) (striking expert's supplemental declaration, in part because it was "riddled with … inappropriate ad hominem attacks on defendants' counsel and expert witnesses"); *Warren v. Baker*, 2007 WL 4111428, at *1 (M.D. Pa. Nov. 16, 2007).  Indeed, as the SEC noted in its relevant Order, FINRA promptly investigated and self-reported the issues to the SEC, the branch

*(Cont'd on next page)*

Gibson, Dunn & Crutcher LLP

1 pursuant to the Maloney Act of 1938, 15 U.S.C. § 78o-3, *et seq*., amending the

2 Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq*. ("Exchange Act").  FINRA

3 was founded in 1935, and is the nation's only registered securities association as well

4 as the nation's largest SRO.[3]

5       FINRA is a key part of the Exchange Act's interrelated, comprehensive

6 mechanism for regulating the securities markets.  *See, e.g.*, 15 U.S.C. § 78o-3;

7 *Desiderio v. NASD*, 191 F.3d 198, 201 (2d Cir. 1999).  FINRA must abide by the

8 Exchange Act, SEC regulations, and its own rules.  *See* 15 U.S.C. § 78s(g)(1).

9 FINRA's regulatory duties are imposed by Congress and require FINRA to conduct

10 day-to-day regulation and administration of the securities markets.  FINRA oversees

11 the qualifications of broker-dealer firms and individual stockbrokers, imposes binding

12 rules that govern FINRA members, and must "enforce compliance by its members"

13 with those same rules and regulations.  15 U.S.C. § 78o-3(b)(2); 15 U.S.C. §§ 78s

14 (g)(1) & (h).

15       The Exchange Act provides for SEC oversight of SROs like FINRA.  *See*

16 15 U.S.C. § 78s.  The SEC must approve all FINRA rules, policies, practices, and

17 interpretations before they are implemented, including the FINRA rules at issue here.

18 *See* 15 U.S.C. § 78s(b) .  The SEC cannot approve a proposed FINRA rule or

19 amendment unless it is consistent with the Exchange Act and the rules and regulations

20 promulgated thereunder.  *See id*.  FINRA rules are "part of the apparatus of federal

21 securities regulation."  *Kurz v. Fid. Mgmt. & Research Co.*, 556 F.3d 639, 641 (7th

22

23 _____

24 *(Cont'd from previous page)*

25     office director responsible resigned, and FINRA took other corrective actions.  *In re*

26     *FINRA*, SEC Rel. No. 65643 at 6 (Oct. 27, 2011).

27 [3]   FINRA was known as National Association of Securities Dealers, Inc. ("NASD").
    In 2007, NASD acquired the member regulation, enforcement and arbitration

28     operations of the New York Stock Exchange and changed its name to FINRA.

Gibson, Dunn &
Crutcher LLP

Cir. 2009).  The SEC can sanction FINRA for failing to satisfy its regulatory responsibilities.  *See* 15 U.S.C. § 78s(h)(1).

**B.     FINRA's SEC-Approved Reporting Requirements, The CRD System, And BrokerCheck**

Pursuant to Section 15A(g)(3) of the Exchange Act, and as approved by the SEC, FINRA enforces standards for the uniform licensing and registration of securities professionals.  *See* 15 U.S.C. § 78o-3(b)(3) & (g)(3).  The SEC has approved two forms for use in registering and terminating registration of securities industry representatives – the Form U4 (for registration) and the Form U5 (for termination).[4]  A Form U4 must be filed whenever a registered representative becomes an employee of a securities firm.  A Form U5 must be completed by a securities firm upon the termination of a registered representative's employment.  Securities firms and registered representatives are required to disclose information concerning customer complaints on their Forms U4 and U5.  *See* Compl. ¶¶ 20-22 ("Information required on form U-4 . . . includes information regarding disciplinary actions, regulatory, judicial, and arbitration proceedings" such as "investment-related, consumer initiated . . . complaint[s.]") (quotation marks omitted).

FINRA is also required to maintain records regarding its member firms and their registered representatives, such as Mr. Doe.  *See* 15 U.S.C. § 78o-3(i)(1)(A).  Information reported on Forms U4 and U5 is maintained by FINRA in CRD, which was developed by FINRA and the securities commissions of the 50 states.  CRD contains registration information as well as regulatory and enforcement actions taken against securities industry personnel.  CRD is operated by FINRA for the benefit of

---

[4]  *See*, *e.g.*, SEC Release No. 34-59916, 74 Fed. Reg. 23750 (May 20, 2009); SEC Release No. 34-52544, 70 Fed. Reg. 58764 (Oct. 7, 2005); SEC Release No. 34-48161, 68 Fed. Reg. 42444 (July 17, 2003); SEC Release No. 34-45531, 67 Fed. Reg. 11735 (March 15, 2002); SEC Release No. 13679, 1977 SEC Lexis 1409 (June 27, 1977); SEC Release No. 11424, 1975 SEC Lexis 1592 (May 16, 1975).

FINRA, the SEC, other SROs, securities firms, and the fifty states (including California) pursuant to an agreement with the North American Securities Administrators Association, an organization of the state securities commissions.  Mr. Doe asserts that the customer complaints on his record were disclosed in response to Questions 14I(2) and 14I(3) on Form U4.  *See* Compl. ¶¶ 21-22.

The CRD database provides securities regulators with a critical regulatory tool in overseeing the activities of registered representatives, and in detecting potential regulatory problems before they evolve into significant investor losses.  A registered representative's full CRD record is available without subpoena to state securities regulators and other law enforcement agencies which use that information in reviewing the registered representative's application for licensing.  The information is also available to securities firms, which are required as a part of their self-regulatory obligations to review the CRD record when making hiring and supervisory decisions. Securities firms are obligated under both federal and California state law to file both the Forms U4 and U5, and to update them promptly whenever they receive new, responsive information.  *See* FINRA By-Laws, Article V, Sec. 2 and 3, *available at* http://finra.complinet.com/en/display/display_viewall.html?rbid=2403&element_id=4617&record_id=6017; CAL. CODE REGS. tit. 10, § 260.210(b)(3).  California requires registered representatives to execute a Form U4, and to register through their firm with FINRA.  *See* CAL. CODE REGS. tit. 10, § 260.210 (a).  The registered representative's firm is then required to file the Form U4 with the CRD system, and to update the Form U4 through CRD within 30 days of any changes to the original Form U4.  *See* CAL. CODE REGS. tit. 10, § 260.210 (b)(1) & (3).

Congress mandates that FINRA make certain disclosures about customer complaints in CRD available to the public from FINRA's BrokerCheck program.  *See* 15 U.S.C. § 78o-3(i)(1)(B)(i) ("A registered securities association shall establish and maintain a toll-free telephone listing, and a readily accessible electronic or other process, to receive and promptly respond to inquiries regarding registration

Gibson, Dunn & Crutcher LLP

information on its members and their associated persons[.]").  Pursuant to FINRA rules, FINRA permanently makes public information concerning investor-initiated arbitration claims that allege that the registered representative was involved in a sales practice violation and which resulted in an award or settlement, as well as historic customer complaints that were not settled or adjudicated.  *See* FINRA Rule 8312(b)(2)(G).  Consistent with the Exchange Act's mandate, FINRA makes BrokerCheck available through a toll-free telephone number as well as through FINRA's website,[5] ensuring that investors have the opportunity to learn valuable information about registered representatives' activities before they engage their services.  *See* 15 U.S.C. § 78o-3(i); Compl. ¶ 16 ("Under the [] Exchange Act, one of FINRA's duties is to 'establish and maintain a system for collecting and retaining registration information' regarding registered representatives."); *id.* at ¶ 25 ("FINRA Rule 8312 governs FINRA's duty to release certain information to the public through BrokerCheck.").

FINRA and the SEC consider expungement of records from CRD and BrokerCheck to be an extraordinary remedy, to be applied sparingly.  *See* SEC Release No. 47435, 68 Fed. Reg. 11435 at 11437 (March 10, 2003).  Information on CRD serves vital regulatory and consumer-protection purposes, and FINRA therefore does not agree to expunge customer complaint information except under the limited circumstances in FINRA Rule 2080 and then only pursuant to court order.[6]  Rule 2080 (f.k.a. Rule 2130) was approved by the SEC after public notice and comment, and addresses the narrow circumstances under which a customer complaint may be

---

[5]  *See* http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/index.htm (last visited April 3, 2012).

[6]  *See* FINRA Rule 2080(a); NOTICE TO ARBITRATORS AND PARTIES ON EXPANDED EXPUNGEMENT GUIDANCE, http://www.finra.org/ArbitrationAndMediation/Arbitration/SpecialProcedures/Expungement/index.htm (last visited Oct. 23, 2013) ("Information should be expunged only when it has no meaningful investor protection or regulatory value.").

1   expunged from a broker's securities record.  *See* SEC Release No. 34-48933, 68 Fed.

2   Reg. 74667 (Dec. 24, 2003).

3       Brokers like Mr. Doe must name FINRA in court actions seeking expungement

4   relief.  This is because FINRA has a duty to protect the integrity and accuracy of the

5   data contained in CRD.   FINRA Rule 2080 does not bind this Court, but it provides

6   guidance as to the standards that FINRA itself applies (with SEC approval) to requests

7   to expunge registration information from FINRA's CRD database.

8       Mr. Doe emphasizes that Rule 2080 allows "a court of competent jurisdiction"

9   to rule on expungement matters, and argues that both state courts and federal courts are

10  "courts of competent jurisdiction."  Dkt. 14-1 at 14, 16-17.  This argument, however,

11  does not answer the question of what is a "court of competent jurisdiction" in *this* case,

12  where the complaint expressly claims that FINRA violated its own SEC-approved

13  rules, and expressly challenges the propriety of SEC-approved FINRA rules.  *E.g.*,

14  Compl., ¶¶ 34-37, 40.  Given these allegations in this case, the *only* "court of

15  competent jurisdiction" to hear these matters is a federal court.  *See* 15 U.S.C. § 78aa;

16  28 U.S.C. § 1331.  Thus Mr. Doe's extended and general discussion of what is a "court

17  of competent jurisdiction" is neither here nor there.

18  **C.**    **Doe Alleges FINRA Violated Its SEC-Approved Rules And Challenges The**

19         **Validity of Those Rules**

20      Mr. Doe asserts that there is no federal jurisdiction because he "is <u>not</u> suing for

21  <u>violation</u> of any Exchange Act provisions" and "<u>not</u> suing for <u>violation</u> of any rules or

22  regulations created under that authority."  Motion to Remand at 3 (emphasis in

23  original).  But Mr. Doe's Complaint relies on (1) alleged violations by FINRA of the

24  Exchange Act and the FINRA rules promulgated thereunder, and (2) the alleged

25  invalidity of FINRA rules approved by the SEC under the Exchange Act.

26      **a.**    **The Relevant Exchange Act Provisions And FINRA Rules**

27      Mr. Doe claims that FINRA is not properly executing its duty to "maintain

28  registration, disciplinary, and other data," including its duty to "establish and maintain

a system for collecting and retaining registration information" regarding "its members and their associated persons[.]"  15 U.S.C. § 78o-3(i)(1)&(5); *see also* Compl. ¶¶ 34, 99, 100, 104, 107, 109, 113.  As noted above, "[e]very self-regulatory organization shall comply with the provisions of this chapter, the rules and regulations thereunder, and its own rules[.]"  15 U.S.C. § 78s(g)(1).

The relevant FINRA rules include its rule – approved by the SEC – that "[i]n response to a written inquiry, electronic inquiry, or telephonic inquiry via a toll-free telephone listing, FINRA shall release[, among other things,] … [(A)] any information reported on the most recently filed Form U4, Form U5, Form U6, Form BD, and Form BDW [and (C)] summary information about certain arbitration awards against a member involving a securities or commodities dispute with a public customer."  FINRA Rule 8312(a) & (b).  As Mr. Doe admits (*see* Compl. ¶¶ 57, 106, 111, 115, 119, 123, 127, 131), the disclosures that the rules require include those at issue here.  Mr. Doe claims that FINRA has violated another subsection of this rule, which states that "FINRA shall not release: … (6) the most recent information reported on a Registration Form, if: (A) FINRA has determined that the information was reported in error by a member, regulator or other appropriate authority[.]"  FINRA Rule 8312(d).

> **b.** **Doe Claims That FINRA Violated Its Rules By Listing Disclosure #1 on BrokerCheck.**

Mr. Doe alleges that Disclosure #1 was not a reportable sales practice, that it was reported in error, and that FINRA violated FINRA Rule 8312 (and therefore Exchange Act Section 78(s)(g)(1)) by listing the disclosure and refusing to remove it when requested.  *See* 15 U.S.C. § 78 (s)(g)(1); *Hibbard Brown & Co., Inc. v. NASD*, 1994 WL 827778, at *2 (D. Del. Oct. 6, 1994) ("[A]ny failure by [FINRA] to comply with its [rules] constitutes a violation of [Exchange Act Section 78s(g)(1)].").

Mr. Doe says that "FINRA Rule 8312 governs FINRA's duty to release certain information to the public through BrokerCheck."  Compl. ¶ 25.  He quotes Rule 8312(d)(6)(A), which says that "FINRA shall not release the most recent information

Gibson, Dunn &
Crutcher LLP

13

reported on a Registration Form if FINRA has determined that the information was reported in error by a member, regulator, or other appropriate authority." *Id.* (quotation marks omitted). He further argues that, while "Form U-4 is the form used for reporting items to CRD that then, when required, are put on BrokerCheck," nevertheless FINRA's disclosure of this reported item was, "[a]s a matter of law, . . . not a reportable sales practice violation. It should not have been reported as such." *Id.* ¶ 34. Mr. Doe claims that "[i]ts reporting was a mistake of law on the basis of the entry itself." *Id.* And further, that "FINRA is required to remove matters reported by mistake pursuant to FINRA's own rules, yet it refused to remove this item, refused even to make a determination of law as to whether it was reportable." *Id.* Because FINRA supposedly violated its rules by disclosing this matter, Mr. Doe "seeks a declaration that the conduct alleged is not a 'sales practice violation' and was reported as such in error of law." *Id.* ¶ 104.

### c.   Doe Challenges FINRA's SEC-Approved Record-Keeping And Reporting Obligations.

Mr. Doe also complains that the very reporting standards and requirements, approved by the SEC after public notice and comment, are improper and should be invalidated:

> [T]here is no value to the public interest in maintaining the Settled Customer Dispute disclosure on Plaintiff's public record. There is no public need to have disclosures made under an erroneous interpretation of FINRA's Rules by the reporting entity maintained on Plaintiff's BrokerCheck Report. In fact, maintaining the disclosure of this baseless complaint on Plaintiff's BrokerCheck Report harms the public by diluting the value of BrokerCheck.

Compl. ¶ 109.

Mr. Doe thus challenges FINRA Rule 8312, which requires FINRA to maintain and disclose information regarding certain types of customer complaints, regardless of the broker's belief as to the validity of the complaints and the propriety of FINRA's SEC-approved standards.

Gibson, Dunn &
Crutcher LLP

Indeed, Mr. Doe's complaint is a call for the Court to second-guess the decision-making that Congress entrusted to the SEC in the interest of investors and regulators. For example, Mr. Doe claims (contrary to the SEC's determination) that "There Is No Value To The Public Interest In Maintaining A Public Record Of Meritless Customer Complaints." *Id.* ¶ 96 (emphasis removed).  He alleges that for BrokerCheck "to maintain a valid public purpose, it must be run in such a manner that it does not create misleading comparisons between financial advisors.  There is no difference between an advisor who had no complaints made against him or her on one hand and an advisor who had baseless complaints made him or her, but a potential customer may view the former as 'safer,' and this dilutes the value of BrokerCheck." *Id.* ¶ 99.  Mr. Doe concludes by alleging that, "[i]f baseless disclosures remain on CRD records and BrokerCheck Reports, such 'information overload' merely serves to confuse the users. . . . Thus, the inclusion of meaningless information relating to baseless customer complaints harms the public by diluting the value of BrokerCheck as a useful source of information." *Id.* ¶ 100; *see also id.* at ¶ 113 ("maintaining the disclosure of this baseless complaint on Plaintiff's BrokerCheck Report harms the public by diluting the value of BrokerCheck"); *id.* ¶¶ 109, 117, 121, 125, 129 & 132.  But Congress entrusted this determination to the SEC, not Mr. Doe.

As a further specific example, Mr. Doe claims that FINRA should not maintain Disclosure #6 on his BrokerCheck Report because FINRA rules did not provide a procedure for him to intervene in the underlying arbitration with the customer and seek expungement.  Mr. Doe says that, "when FINRA changed [Rule 8312] so that the matter would be disclosed in BrokerCheck even if the associated person was not named as a respondent, FINRA failed to provide a procedure for such an associated party to intervene in the arbitration and seek expungement." Compl. ¶ 93.  He claims that "[t]his is fundamentally unfair, as is requiring a matter . . . marked 'closed with no action,' to sit on Plaintiff[']s public record forever, where there was no procedure for the Plaintiff to defend himself and seek expungement through FINRA." *Id.* at ¶ 95.

This is a direct challenge to the validity of FINRA Rule 8312 (requiring disclosure of customer dispute arbitrations even if the associated person was not named as a respondent), and FINRA Rule 12805 (providing a procedure for expungement when an associated person is named as a respondent in arbitration).  In making this claim, Mr. Doe challenges FINRA Rules 8312 and 12805, which require FINRA to maintain and disclose information regarding certain types of customer complaints, regardless of the broker's belief as to the validity of the complaints.

### d.   Doe Alleges Other Violations Of FINRA Rules, Which Are Subject To Exclusive Federal Jurisdiction.

In addition to his direct claims that FINRA violates its own rules, and his facial challenges to the propriety of SEC-approved FINRA rules, Mr. Doe also claims that FINRA violates FINRA Rule 8312 by failing to disclose certain sales practice violations that did not involve independent customer complaints, and by disclosing certain sales practice violations that Mr. Doe claims should not have been disclosed. Specifically, Mr. Doe alleges that, "[i]n spite of the fact that FINRA bases its BrokerCheck policy on the overriding need for public disclosure as a matter of public policy, FINRA has allowed masses of serious sales practice violations found by FINRA itself to remain undisclosed on hundreds of advisor's records."  Compl. ¶ 37. After asserting these supposed violations, Mr. Doe goes on to claim that, "[i]n spite of FINRA's failure to deem it important to provide this information to the public, FlNRA insists that any customer complaint, oral or written . . . remains on the associated person's public record forever on the theory that such disclosure to the public is important as a matter of public policy." *Id*. ¶ 40.

But determining whether FINRA rules are in the public interest is, as set forth above, entrusted by Congress to the SEC to decide after public notice and comment. *See* 15 U.S.C. § 78s(b).  Thus, Mr. Doe both directly alleges violations of FINRA rules and Exchange Act requirements, and also challenges the validity of FINRA's SEC-approved record-keeping requirements.  But because these determinations are left to

the SEC (subject to review by a Court of Appeals), *see* 15 U.S.C. § 78y, the federal courts have exclusive jurisdiction.[7]

## IV.    ARGUMENT

## A.    This Court Has Exclusive Jurisdiction Under The Exchange Act

Section 27 of the Exchange Act provides that "[t]he district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." 15 U.S.C. § 78aa.  This includes violations of the FINRA rules.  *See Sacks*, 663 F.3d at 1069 (holding that FINRA rules "are approved by the SEC" and "violations are subject to exclusive federal jurisdiction").  "A plaintiff may not avoid federal jurisdiction by omitting from the complaint federal law essential to his or her claim[.]" *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1212 (9th Cir. 1998).

In *Dobbins v. National Association of Securities Dealers*, 2007 WL 2407081 (N.D. Ohio Aug. 22, 2007), the plaintiff sought expungement of customer complaints which were allegedly "false, clearly erroneous or factually impossible and/or where [the plaintiff] was not the registered person involved in the alleged investment-related sales practice violation." *Id.* at *1 (quotation marks omitted).  The plaintiff argued that "[t]he NASD routinely publishes false information without making any attempt to determine the truth of the allegations found within the customer complaint." Complaint in *Dobbins v. NASD*, No. 5:06-2968, 2007 WL 2407081, at ¶ 21 (N.D. Ohio Aug. 22, 2007).  The plaintiff also requested a declaration under the Ohio Declaratory Judgment Act as to whether the NASD rules had been properly applied.  *Dobbins*,

---

[7]  *See Charles Schwab & Co., Inc. v. FINRA*, 861 F. Supp. 2d 1063, 1069 (N.D. Cal. 2012); *Cook v. NASD Regulation, Inc.*, 31 F. Supp. 2d 1245, 1248-49 (D. Colo. 1998); *Dobbins v. NASD*, 2007 WL 2407081, at *2 (N.D. Ohio Aug. 22, 2007); *Matyuf v. NASD DR, Inc.*, 2004 U.S. Dist. LEXIS 25174, at *8-9 (W.D. Pa. Oct. 4, 2004); *American Benefits Group, Inc. v. NASD*, 1999 U.S. Dist. LEXIS 12321, at *23 (S.D.N.Y. Aug. 10, 1999).

1   2007 WL 2407081 at *2.  The Court denied the motion to remand, finding that it had

2   exclusive jurisdiction because the plaintiff was "challenging the NASD's application

3   and interpretation of its rules enacted pursuant [to] the [Exchange Act]."  *Id.* at *1-2.

4         Here, as in *Dobbins*, Mr. Doe's expungement and declaratory relief claims are

5   based on FINRA's alleged failure to follow its rules and fulfill its regulatory

6   responsibilities.  *See supra* Part III., C.; Compl. ¶ 34 ("FINRA is required to remove

7   matters reported by mistake pursuant to FINRA's own rules, yet it refused to remove

8   this item, refused even to make a determination of law as to whether it was

9   reportable."); *id.* ¶ 37 ("In spite of the fact that FINRA bases its BrokerCheck policy

10  on the overriding need for public disclosure as a matter of public policy, FINRA has

11  allowed masses of serious sales practice violations found by FINRA itself to remain

12  undisclosed on hundreds of advisor's records.").  As such, this Court has exclusive

13  jurisdiction.  *See Dobbins*, 2007 WL 2407081 at *1-2; *see also Sacks*, 663 F.3d at

14  1068-69 (district court properly asserted jurisdiction over state law claims, where the

15  "central question" was whether "the [defendant] arbitrators exceeded their jurisdiction

16  in violation of FINRA rules," so that "application of federal law [was] necessary to

17  resolve each of the state law theories"); *Lippitt v. Raymond James Financial Services,

18  Inc.*, 340 F.3d 1033, 1042 (9th Cir. 2003) ("To be sure, if [Plaintiff] were asserting a

19  violation of an SRO rule, then . . . this would be a matter of exclusive federal

20  jurisdiction, and therefore removal would be proper."); *Sparta*, 159 F.3d at 1212 (the

21  plaintiff's claims, though "posited as state law claims," were "founded on [FINRA's]

22  conduct" in carrying out its regulatory responsibilities, "the propriety of which must be

23  exclusively determined by federal law");[8] *Hawkins v. NASD*, 149 F.3d 330, 331-32

24

25  [8]  Mr. Doe argues that *Sparta* is distinguishable because the plaintiff in that case
    "attempted to build his edifice of state law claims upon a foundation comprised of
26  NASD rules and regulations."  Motion to Remand, ¶ 1(d) n. 11 (quotation marks
    omitted).  This argument fails because, as set forth above (*see supra* Part III., C.),
27  that is precisely what Mr. Doe does here.

28

1    (5th Cir. 1998) (district court did not err in denying motion to remand where a

2    registered representative alleged that FINRA violated various provisions of the

3    Exchange Act and breached duties arising from the FINRA Code of Arbitration

4    Procedure); *Manning v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2013 WL

5    1164838, at *4 (D.N.J. Mar. 20, 2013) (denying motion to remand where the case was

6    "premised upon and its resolution depend[ed] on the alleged violation of a regulation

7    promulgated under the [Exchange] Act"); *Whitehall Wellington Investments, Inc. v.*

8    *NASD*, 2000 WL 1846129, at *3 (S.D. Fla. Dec. 7, 2000) (denying motion to remand,

9    and noting that "[n]umerous federal courts have found removal proper where a state

10   law suit alleges that the NASD violated its own rules or regulations during the exercise

11   of its regulatory functions"); *Lowe v. NASD Regulation, Inc.*, 1999 U.S. Dist. LEXIS

12   19489, at *9-10 (D.D.C. Dec. 14, 1999) (denying motion to remand state law claims

13   which were "predicated on the NASDR's violation of its own [arbitration] rules");

14   *Hibbard*, 1994 WL 827778, at *1-2 (denying motion to remand where the plaintiff's

15   state law claims were premised on an alleged violation by NASD of its bylaws).[9]

16

17   ───────────────

18   [9]  Mr. Doe's cases are inapposite.  He says that the Supreme Court and Ninth Circuit
     have "held that there is <u>not</u> exclusive federal question jurisdiction under the []
19   Exchange Act for all claims relating to securities."  Motion to Remand at 4 (citing
     *Matsushita Electric Industrial Co., Ltd. v. Epstein*, 516 U.S. 367, 383 (1996);
20   *Dennis v. Hart*, 724 F.3d 1249, 1254 (9th Cir. 2013); *Lippitt v. Raymond James
     Financial Services, Inc.*, 340 F.3d 1033, 1042 (9th Cir. 2003*)*; and *Marin General
21   Hospital v. Modesto & Empire Traction Company*, 581 F.3d 941, 947-49 (9th Cir.
     2009)).  But these cases do not hold that federal courts lack exclusive jurisdiction
22   over alleged violations of the Exchange Act and SEC-approved SRO rules, *by the
     SRO itself.  See Sparta*, 159 F.3d at 1212; *Sacks*, 663 F.3d at 1068-69.  Indeed, the
23   Supreme Court in *Matsushita* noted that "Congress' intent to provide an exclusive
     federal forum for adjudication of suits to enforce the Exchange Act is clear
24   enough."  *Matsushita*, 516 U.S. at 385-86.  *Marin General Hospital* is not even a
     securities case, but rather involves the Employee Retirement Income Security Act.
25   Mr. Doe says it is "inexplicable" that FINRA did not cite *Lickiss v. FINRA*, 2011
     WL 2471022 (N.D. Cal. June 22, 2011) and *Spalding v. FINRA*, 2013 WL 1129396
26   (N.D. Ga. March 19, 2013) in its Notice of Removal.  Motion to Remand at 1-2.

27

28                                                                    *(Cont'd on next page)*

Gibson, Dunn &
Crutcher LLP

**B.     Doe's Claims Raise A Substantial Question Of Federal Law**

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  A case "aris[es] under" federal law if it involves "a cause of action created by federal law" or "state-law claims that implicate significant federal issues."  *Grable*, 545 U.S. at 312.  "[T]he question whether a claim 'arises under' federal law must be determined by reference to the 'well pleaded complaint.'"  *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citation omitted).  A single claim over which federal question jurisdiction exists is sufficient to allow removal.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005).

"[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress" (the "*Grable* test").  *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013) (citing *Grable*, 545 U.S. at 314).  Here, all four factors are satisfied.

*First*, Mr. Doe's claims raise a federal issue both because he bases his Complaint on claims that FINRA has failed to fulfill its duties under the Exchange Act

---

*(Cont'd from previous page)*

But in both of those cases, the plaintiffs made a fact-specific request for expungement, and these courts found that plaintiffs did not premise their claims on alleged violations by FINRA of the Exchange Act and/or the FINRA rules.  *See Lickiss*, 2011 WL 2471022, at *1; *Spalding*, 2013 WL 1129396, at *1-2.  *Dennis* is similarly distinguishable, as the complaints did not allege "any implicit or explicit violation of … the Exchange Act[.]"  *Dennis*, 724 F.3d at 1252-53.  If the Court were to address these cases, FINRA respectfully submits that they were wrongly decided.  A claim for expungement that is not made in a petition to confirm an arbitration award triggers exclusive jurisdiction under Section 27 of the Exchange Act because it seeks to "enforce [a] liability or duty created by [the Exchange Act]."  15 U.S.C. § 78aa.  Under the Exchange Act, FINRA has a duty to "collect[] and retain [] registration information," 15 U.S.C. § 78o-3(i)(1)(A), which necessarily includes the expungement of those records when appropriate.  Thus, a claim for expungement concerns a "duty created by [the Exchange Act]."

and the FINRA rules, and on facial challenges to the validity and propriety of FINRA's SEC-approved rules.[10]

*Second*, the federal issue is "disputed" because FINRA maintains that its rules and actions are proper, and that any challenge to FINRA's SEC-approved rules must be heard first in the SEC's administrative process, and then in the Court of Appeals. *See Charles Schwab & Co., Inc. v. FINRA*, 861 F. Supp. 2d 1063, 1069 (N.D. Cal. 2012); *Cook v. NASD Regulation, Inc.*, 31 F. Supp. 2d 1245, 1249 (D. Colo. 1998); *Manning*, 2013 WL 1164838, at *5 (defendants disputed whether the alleged wrongful behavior actually harmed the plaintiffs); *Dobbins*, 2007 WL 2407081, at *2; *Matyuf v. NASD DR, Inc.*, 2004 U.S. Dist. LEXIS 25174, at *8-9 (W.D. Pa. Oct. 4, 2004); *American Benefits*, 1999 U.S. Dist. LEXIS 12321, at *23.

*Third*, the federal issue is "substantial." FINRA's Rules state when a disclosure should or should not be reported on BrokerCheck. Mr. Doe claims that FINRA violated these rules, and challenges the validity and propriety of these rules. Resolution of this issue will require this Court to determine whether challenges to the FINRA Rules must first be heard by the SEC and then a Court of Appeal, and whether

---

[10]   *See supra* Part III., C.; *Charles Schwab*, 861 F. Supp. 2d at 1069 (dismissing challenge to FINRA disciplinary action and to FINRA rule regarding arbitration of class actions because firm failed to exhaust administrative remedies, and court lacked subject matter jurisdiction); *Cook*, 31 F. Supp. 2d at 1248-49 ("Plaintiffs' attempt to bring this [equitable] action . . . is little more than an attempt to circumvent or attack collaterally in the district court issues which must be first challenged at the SEC level, with further review available at the Court of Appeals level"); *Manning*, 2013 WL 1164838, at *5 (denying motion to remand; state claims raised a "federal issue" because they were "predicated on" an alleged violation of an SEC regulation); *Dobbins*, 2007 WL 2407081, at *2 (the Exchange Act provides that "the exclusive judicial remedy for complaints arising from the NASD's enactment and interpretation of its rules lies in the United States Court of Appeals following appeal to the [SEC]"); *Matyuf*, 2004 U.S. Dist. LEXIS 25174 at *8-9 (dismissing complaint where plaintiff challenged reasonableness of NASD Rule, but did not exhaust administrative remedies prior to filing suit); *American Benefits*, 1999 U.S. Dist. LEXIS 12321, at *23.

Gibson, Dunn & Crutcher LLP

FINRA acted in compliance with the Exchange Act and the FINRA Rules.  The outcome will impact FINRA's internal procedures as well as the bases upon which individuals may bring expungement actions, and challenges to the FINRA Rules, in the future – matters regulated by the SEC under federal law.  As such, this element is satisfied.[11]

   *Fourth*, addressing the issue would not disturb the federal-state balance because Mr. Doe's claims "primarily involve the issue of whether the complained of conduct [was] consistent with [FINRA's] obligations under the Exchange Act" and the FINRA rules, and whether challenges to those rules are appropriately resolved in the dispute resolution process set out by Congress.  *Manning*, 2013 WL 1164838, at *6; *see also NASDAQ OMX Group, Inc. v. UBS Securities LLC*, 2013 WL 3942948, at *12 (S.D.N.Y. June 18, 2013) ("The interpretation and application of SEC-approved rules and the duties that stem from the Exchange Act in the context of the operation of a national securities exchange are issues of paramount federal concern, which demand

---

[11] *See Grable*, 545 U.S. at 314-15 (the plaintiff's claim was premised on an alleged violation by the IRS of a federal statute, and "[t]he meaning of the federal [] provision [was] an important issue of federal law"); *Friedlander v. Troutman, Sanders, Lockerman & Ashmore,* 788 F.2d 1500, 1504 (11th Cir. 1986) (noting that "[t]he comprehensive scheme of statutes and regulations designed to police the securities industry is indicative of a strong federal interest"); *In re Facebook, Inc., IPO Securities and Derivative Litigation*, 922 F. Supp. 2d 475, 480-85 (S.D.N.Y. 2013) (denying motion to remand where the plaintiff's state law claims involved an inquiry into whether the alleged wrongdoing was consistent with the duties imposed on NASDAQ under the Exchange Act, the rules and regulations promulgated thereunder, and NASDAQ'S own rules); *Manning*, 2013 WL 1164838, at *5 (federal issue was substantial where resolution of Plaintiffs' claims "depend[ed] on the disputed issue," determination of the issue "would [] impact subsequent lawsuits," and the issue was "important to the federal system as a whole").

Gibson, Dunn & Crutcher LLP

1  uniform federal application, over which federal courts have 'special expertise' and

2  state courts and commercial arbitrators do not.").[12]

3  **C.    Attorney's Fees Are Not Appropriate**

4         The Supreme Court has stated that, "absent unusual circumstances, attorney's

5  fees should not be awarded where the removing party has an objectively reasonable

6  basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005).

7  Mr. Doe's request for attorney fees does not remotely meet this standard even if the

8  Court were to remand the case.  As set forth above, Mr. Doe alleges violations of

9  FINRA's SEC-approved Rules, and challenges the validity of those Rules.  Such

10 allegations and challenges are subject to this Court's exclusive jurisdiction under the

11 Exchange Act and under federal question jurisdiction.  *See* 15 U.S.C. § 78aa; *Sacks*,

---

[12]  Mr. Doe takes issue with FINRA's notice of removal because it "does not analyze
the *Gunn* four factor test[.]"  Motion to Remand at 22, n. 12 & 13.  But the test in
*Gunn* is not new, and instead an effort to "bring some order" to what had proved an
"unruly doctrine," *Gunn* , 133 S.Ct. at 1065; *see Verizon Maryland, Inc. v. Global
NAPS, Inc.*, 377 F.3d 355, 362 (4th Cir. 2004) (federal jurisdiction existed over
state law claim that depended on interpretation of contractual duties arising from
federal statutes; in reaching this conclusion, the Court considered "whether the
claim involve[d] an agreement and duties that [were] creations of federal law and
whether the purpose of the underlying statute . . . [was] best served by the exercise
of federal judicial power"); *D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d
93, 101-02 (2d Cir. 2001) (federal jurisdiction existed where resolution of the state
law claims "require[d] a court to construe federal securities laws and evaluate the
scope of the NYSE's duties, as defined under the Exchange Act and the regulations
and [exchange] rules thereto").  In any event, *Gunn* was a legal malpractice claim
regarding a patent lawsuit, in which the Supreme Court held that there was no
federal jurisdiction because any patent issues that might arise were "unlikely to
have the sort of significance for the federal system necessary to establish
jurisdiction." *Gunn*, 133 S.Ct.  at 1065.  Mr. Doe also cites *Municipality of
Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8 (1st Cir.
2013), where the court held that there was no federal jurisdiction because the
dispute was "fact-bound and situation-specific" and "unlikely to have any impact
on the development of federal law."  *Id.* at 14 (quotation marks omitted).  This case
is distinguishable because here, Mr. Doe's claims involve important issues of law,
the resolution of which is significant to the system of federal securities regulation.

Gibson, Dunn &
Crutcher LLP

663 F.3d at 1069; *Sparta*, 159 F.3d at 1212.  At a minimum, and even if this Court were to ultimately find removal was not appropriate, FINRA had an "objectively reasonable" basis for removing this case.  *Martin*, 546 U.S. at 136; *see also Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008) ("removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted").

## V.    CONCLUSION

For the foregoing reasons, FINRA requests that this Court deny Plaintiff's Motion to Remand and for Attorney Fees.

DATED:  October 28, 2013                    Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:  */s/Ethan D. Dettmer*
            Ethan D. Dettmer

Attorneys for
FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC.

101602750.1

Gibson, Dunn &
Crutcher LLP