GIBSON, DUNN & CRUTCHER LLP
ETHAN D. DETTMER, SBN 196046
EDettmer@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, California 94105-2933
Telephone: 415.393.8200
Facsimile: 415.393.8306

HILLARY N. BUNSOW, SBN 278719
HBunsow@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC. (FINRA)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>        Plaintiff,<br><br>v.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., and Does 1 to 10, inclusive,<br><br>        Defendants. | CASE NO. 2:13-CV-6436-DDP (ASx)<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Hearing<br>Date: November 18, 2013<br>Time: 10:00 a.m.<br>Place: 312 N. Spring St., Ctrm. 3<br>Judge: Hon. Dean D. Pregerson |

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION AND SUMMARY OF ARGUMENT | 4~~1~~ |
| II. | ARGUMENT | 5~~2~~ |
| | A. Doe's Complaint Challenges FINRA Rules And Alleges FINRA Violated Those Rules | 5~~2~~ |
| | B. Doe Refuses To Reveal His Identity, Confirming That This Is A Facial Challenge To FINRA's SEC-Approved Rules | 6~~3~~ |
| | C. Doe Does Not Dispute the Arguments in FINRA's Motion to Dismiss | 7~~4~~ |
| |     a. The Complaint Must Be Dismissed Because Doe Failed to Exhaust Administrative Remedies | 7~~4~~ |
| |     b. The Complaint Should Be Dismissed Because it Fails to State a Claim | 8~~5~~ |
| | D. Doe's Reliance on Expungement Cases Is Misplaced | 9~~6~~ |
| III. | CONCLUSION | 11~~8~~ |

Gibson, Dunn & Crutcher LLP


Case 2:13-cv-06436-DDP-AS   Document 18   Filed 11/04/13   Page 3 of 17   Page ID #:597

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

Bridge v. E*Trade Sec. LLC,
  2012 WL 3249508 (N.D. Cal. Aug. 7, 2012) ............................................................ 7

Buscetto v. FINRA,
  2012 WL 1623874 (D. N.J. May 9, 2012) ............................................................... 6

Charles Schwab & Co., Inc. v. FINRA,
  861 F. Supp. 2d 1063 (N.D. Cal. 2012) ............................................................ 1, 4

D'Alessio v. NYSE,
  258 F.3d 93 (2d Cir. 2001) ................................................................................ 1, 5

Dobbins v. NASD,
  2007 WL 2407081 (N.D. Ohio Aug. 22, 2007) ................................................ 5, 6

Hibbard Brown & Co., Inc. v. NASD,
  1994 WL 827778 (D. Del. Oct. 6, 1994) ................................................................ 3

Lickiss v. FINRA,
  208 Cal. App. 4th 1125 (2012) .......................................................................... 6, 7

MM&S Financial, Inc. v. NASD,
  364 F.3d 908 (8th Cir. 2004) ............................................................................. 1, 5

Reinking v. FINRA,
  No. A-11-CA-813-SS (W.D. Tex. Dec. 1, 2011) .................................................. 7

**Statutes**

15 U.S.C. § 78 ..................................................................................................... 1, 3, 4

**Rules**

FINRA Rule 2080 ........................................................................................................ 7


Gibson, Dunn &
Crutcher LLP

3

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff John Doe says that he seeks a run-of-the-mill expungement of his public broker records, but that is not what he alleges in his complaint.

His complaint alleges that certain of FINRA's disclosure rules – approved by the SEC after notice and comment – are "fundamentally unfair" (dkt. 5-1 at ¶¶ 93-95) and that they do not "maintain a valid public purpose" because they create "information overload" that "merely serves to confuse the users" of the BrokerCheck service (*id.* ¶¶ 98-100). In addition to challenging the SEC's policy determinations regarding the public purpose of broker disclosures and the BrokerCheck system, Mr. Doe alleges that FINRA has violated its own SEC-approved rules with respect to Mr. Doe's disclosures. Specifically, he says that FINRA violated its rules in "refus[ing] to remove" (*id.* ¶ 34) various customer complaints from his public record, and by allegedly *not* reporting various other complaints about brokers (*see id.* ¶¶ 37-39).

Nonetheless, Mr. Doe does not dispute that challenges to FINRA rules must be heard by the SEC and then a United States Court of Appeals. *See* dkt. 17 at 13; 15 U.S.C. § 78y; *Charles Schwab & Co., Inc. v. FINRA*, 861 F. Supp. 2d 1063, 1069 (N.D. Cal. 2012). Nor does Mr. Doe dispute that FINRA is immune to private causes of action for challenges to FINRA's regulatory actions. *See, e.g.*, dkt. 17 at 17-18; *MM&S Financial, Inc. v. NASD*, 364 F.3d 908, 911-12 (8th Cir. 2004); *D'Alessio v. NYSE*, 258 F.3d 93, 104-05 (2d Cir. 2001).

Because he does not (and cannot) dispute the law on these points, Mr. Doe instead attempts to re-characterize the allegations of his complaint, and also argues that FINRA should have agreed to his proposed non-disclosure agreement. Both arguments fail. *First*, as noted above, the text of his complaint directly challenges the wisdom and fairness of FINRA's SEC-approved rules, and claims that FINRA violated those rules. Mr. Doe cannot now recharacterize that language. *Second*, while Mr. Doe claims that FINRA refused to agree to his proposed non-disclosure agreement, he fails to explain that the sticking point in the negotiations is his insistence that *FINRA* bear

Gibson, Dunn & Crutcher LLP

the burden of negotiating the non-disclosure agreements with the various state regulators. *See* dkt. 17-2 at Exhs. B-I. Not only is it not FINRA's burden to do so, but if FINRA assumed that burden here, FINRA would doubtless have to do so again and again in the hundreds of expungement actions filed across the country.[1]

Because Mr. Doe directly challenges FINRA's rules, and accuses FINRA of violating them, this matter should be dismissed to be heard in the forum dictated by Congress in the Exchange Act.

## II. ARGUMENT

### A. Doe's Complaint Challenges FINRA Rules And Alleges FINRA Violated Those Rules

Though Mr. Doe maintains that he is neither "challenging any SEC or FINRA rule" (dkt. 17 at 13) nor "suing FINRA for a regulatory act" (*id.* at 18), that is precisely what he has done. Mr. Doe's claims are premised on his disagreement with the requirements of SEC-approved FINRA rules, and the way in which FINRA enforces those rules. Throughout his complaint, Mr. Doe repeatedly complains that FINRA's SEC-approved record-keeping and reporting obligations are improper and should be invalidated:

> [T]here is no value to the public interest in maintaining the Settled Customer Dispute disclosure on Plaintiff's public record. There is no public need to have disclosures made under an erroneous interpretation of FINRA's Rules by the reporting entity maintained on Plaintiff's BrokerCheck Report. In fact, maintaining the disclosure of this baseless complaint on Plaintiff's BrokerCheck Report harms the public by diluting the value of BrokerCheck.

Dkt. 5-1 at ¶ 109; *see also id.* ¶¶ 88-95 (arguing that it is "fundamentally unfair" to "require[] a matter ... marked 'closed with no action,' to sit on Plaintiff[']s public record forever, where [under the FINRA rules] there was no procedure for the Plaintiff

---

[1] Mr. Doe claims that FINRA should have stipulated to postpone the hearing on the Motion to Dismiss until after the hearing on the Motion to Remand. *See* dkt. 17 at 2 n. 1. But as the briefs make clear, these motions involve intertwined issues, and it would be inefficient to hear the motions at separate times.

1 to defend himself and seek expungement through FINRA"), 93, 95-96, 99-100, 109, 113, 117, 121, 125, 129 & 132.

In addition, Mr. Doe argues that FINRA violated its rules and the Exchange Act. *See* dkt. 5-1 at ¶¶ 25, 34, 56-58 & 104 (arguing that FINRA violated FINRA Rule 8312 by listing Disclosure #1 on BrokerCheck and "refus[ing]" to remove it); *id.* ¶¶ 37-42 ("In spite of the fact that FINRA bases its BrokerCheck policy on the overriding need for public disclosure as a matter of public policy, FINRA has allowed masses of serious sales practice violations found by FINRA itself to remain undisclosed on hundreds of advisor's records."); 15 U.S.C. § 78 (s)(g)(1); *Hibbard Brown & Co., Inc. v. NASD*, 1994 WL 827778, at *2 (D. Del. Oct. 6, 1994) ("[A]ny failure by [FINRA] to comply with its [rules] constitutes a violation of [Exchange Act Section 78s(g)(1)].").

**B.  Doe Refuses To Reveal His Identity, Confirming That This Is A Facial Challenge To FINRA's SEC-Approved Rules**

By refusing to disclose his name, Mr. Doe has made it impossible for FINRA and this Court to evaluate the facts and determine whether expungement is appropriate. In an effort to avoid this fact, Mr. Doe argues that it is FINRA's fault that he cannot reveal his name. *See* dkt. 17 at 11-12. While FINRA agreed to sign the proposed NDA (*see* dkt. 17-2 at Exhs. C & E), FINRA does not have the authority to bind state regulators. As Mr. Doe alleges in his complaint (*see* dkt. 5-1 at ¶ 27), FINRA is required to inform state regulators of Mr. Doe's request and that FINRA intends to oppose Mr. Doe's petition for expungement. However, Mr. Doe's proposed agreement does not allow FINRA to disclose Mr. Doe's name to these entities unless they agree to keep his identity confidential and use the information for regulatory purposes only. *See* dkt. 17 at 11. In essence, Mr. Doe is asking FINRA to negotiate separate non-disclosure agreements with the North American Securities Administrators' Association ("NASAA") and the state regulators, on behalf of Mr. Doe. While it is FINRA's responsibility to inform state regulators of Mr. Doe's request for expungement (*see id.*

at 11-12 n.7), it is *not* FINRA's responsibility to negotiate with state regulators in an effort to maintain Mr. Doe's anonymity. Indeed, if FINRA assumed that responsibility here, it would be sure to be held to it in hundreds of future expungement cases.

Mr. Doe is free to contact the NASAA and state regulators directly, if he wishes, to negotiate a non-disclosure agreement, but FINRA should not be asked to do this work for him, contrary to what the SEC has found to be investors' interests.

### C. Doe Does Not Dispute the Arguments in FINRA's Motion to Dismiss[2]

#### a. The Complaint Must Be Dismissed Because Doe Failed to Exhaust Administrative Remedies

An individual seeking to challenge FINRA rules must first exhaust administrative remedies at the SEC and then, if dissatisfied, seek review before a United States Court of Appeals. *See* 15 U.S.C. § 78y; *Charles Schwab*, 861 F. Supp. 2d at 1069. Mr. Doe does not contest, and even admits, that challenges to FINRA rules must first be administratively exhausted. *See* dkt. 17 at 13 ("[T]he fact that a challenge to FINRA's rules requires exhaustion is irrelevant."). Mr. Doe argues that "[t]he Complaint seeks expungement, and this does not require exhaustion." *Id.* But as set forth above (*see supra* Part II.A.), Mr. Doe's claims are, in reality, direct challenges to SEC-approved FINRA rules. Accordingly, Mr. Doe's complaint must be dismissed for failure to exhaust administrative remedies. *See* dkt. 12 at 8-12.

Mr. Doe attempts to distinguish the cases cited by FINRA, arguing that here, Mr. Doe "does not seek a declaration regarding a FINRA rule, or seek to enjoin any

---

[2] Mr. Doe argues that FINRA's Motion to Dismiss is "improper" because it attaches "several exhibits ... without properly authenticating those exhibits with an affidavit or declaration." Dkt. 17 at 4. The Motion to Dismiss attaches a blank Form U4 as Exhibit A (*see* dkt. 12 at Exh. A), and a page from the blank Form U4 as Exhibit B (*see id.* at Exh. B). Mr. Doe discusses the Form U4 at length in his complaint (*see* dkt. 5-1 ¶¶ 17, 20-24, 34, 57, 106, 111, 123, 127, 131), and he cannot now object to FINRA presenting the form to this Court. Furthermore, Mr. Doe cannot dispute that the documents are accurate, and they are subject to judicial notice. *Pham v. FINRA*, 2013 WL 633398, at *1, *1 n. 2 (N.D. Cal. Feb. 20, 2013).

FINRA proceeding." Dkt. 17 at 15. But this is not true. Mr. Doe asserts a claim for declaratory relief, "seek[ing] a declaration that the conduct alleged is not a 'sales practice violation' and was reported as such in error of law." Dkt. 5-1 at ¶ 104. And as set forth above, Mr. Doe repeatedly alleges that FINRA "is required to remove matters reported by mistake pursuant to FINRA's own rules, yet it refused to remove this item ...." *Id.* ¶ 34; *see also id.* ¶¶ 37-39.

Mr. Doe cannot distinguish *Dobbins v. NASD*, 2007 WL 2407081 (N.D. Ohio Aug. 22, 2007), because in both that case and here, the plaintiff brought a claim for expungement which "challeng[ed] [FINRA's] application and interpretation of its rules[.]" *Id.* at *2 (noting that "15 U.S.C. § 78y(a) provides that the exclusive judicial remedy for complaints arising from the NASD's enactment and interpretation of its rules lies in the United States Court of Appeals following appeal to the [SEC]"); *see also* dkt. 16 at 17-18.

Mr. Doe tries to distinguish FINRA's other cases on the grounds that they do not involve expungement. That effort fails for similar reasons. *See* dkt. 17 at 14-15. The fact that the rules Mr. Doe challenges relate to record-keeping does not make his challenge meaningfully different from challenges to other types of FINRA rules. The point of each of the cases cited is that challenges to FINRA rules, or FINRA's application of them, must be heard first by the SEC. Mr. Doe does not contest this fundamental point, which is dispositive here.

### b. The Complaint Should Be Dismissed Because It Fails To State A Claim

FINRA has absolute immunity when exercising its regulatory authority, *see, e.g., D'Alessio*, 258 F.3d at 104-05, and there is no private right of action against FINRA for its regulatory acts, *see, e.g., MM&S Financial*, 364 F.3d at 911-12. Mr. Doe does not contest, and indeed admits, these facts. *See* dkt. 17 at 17-18 ("Courts routinely hold that FINRA is immune, or that no private right of action exists against an SRO like FINRA, for its regulatory acts.") (emphasis removed). Mr. Doe argues

that he "is not suing FINRA for a regulatory act." Dkt. 17 at 18. This is simply not true. As set forth above (*see supra* Part II.A.), Mr. Doe's claims are premised on the argument that FINRA is not properly exercising its regulatory functions.

Mr. Doe's only argument appears to be that the cases cited by FINRA are inapposite because Mr. Doe is not seeking monetary relief. *See* dkt. 17 at 19. But Mr. Doe is wrong. Regulatory immunity applies even when no monetary relief is sought. *See, e.g., Buscetto v. FINRA*, 2012 WL 1623874, at *4 n. 4 (D. N.J. May 9, 2012) ("Dismissal of Plaintiff's complaint [for expungement] is also warranted because FINRA is entitled to immunity from this action, as it arises from FINRA's exercise of its regulatory functions."); *Dobbins*, 2007 WL 2407081, at *3 (dismissing the plaintiff's complaint for expungement and declaratory relief, in part because "NASD has absolute immunity for its regulatory acts and omissions, and there is no private right of action against the NASD").[3] Accordingly, Mr. Doe's complaint must be dismissed because it fails to state a claim. *See* dkt. 12 at 12-14.

### D. Doe's Reliance On Expungement Cases Is Misplaced

Because Mr. Doe's claims are not a straightforward request for expungement, his reliance on *Lickiss v. FINRA*, 208 Cal. App. 4th 1125 (2012), and similar cases is misplaced. In those cases, named individuals brought expungement claims based on their actual records, as opposed to anonymous records and facial challenges to

---

[3] Mr. Doe's assertion that the Ninth Circuit "limited *Sparta* [*Surgical Corp. v. NASD*, 159 F.3d 1209, 1215 (9th Cir. 1998)] dramatically" (dkt. 17 at 18 n.8) is wrong, as demonstrated by Mr. Doe's reliance on dictum regarding federal jurisdiction (not regulatory immunity) from a case in which FINRA was not a party. In any event, the Ninth Circuit has recently reiterated the continuing viability of *Sparta* on that point. *See Sacks v. Dietrich*, 663 F.3d 1065, 1068-69 (9th Cir. 2011) ("[I]f the arbitrators were allowed to disqualify Sacks under FINRA's rules, there would be no viable cause of action. If, on the other hand, the arbitrators exceeded their jurisdiction in violation of FINRA rules, then Sack's claims fall under the imperative of 15 U.S.C. § 78aa.").

FINRA's rules. Thus those cases have no application here.[4] Mr. Doe cites three cases for the proposition that "a court may order expungement." Dkt. 17 at 2 (citing *Lickiss*, 208 Cal. App. at 1135; *Bridge v. E*Trade Sec. LLC*, 2012 WL 3249508, at *3-4 (N.D. Cal. Aug. 7, 2012); and *Reinking v. FINRA*, No. A-11-CA-813-SS, at p. 12 (W.D. Tex. Dec. 1, 2011)). But FINRA does not dispute that a court may order expungement. *See* FINRA Rule 2080. In order to obtain such an order, however, the party seeking expungement must bring a proper, fact-specific claim for expungement. Mr. Doe has not done so here, instead challenging FINRA's rules and arguing that FINRA has failed to fulfill its regulatory duties. *See supra* Part II.A. As such, these cases are distinguishable and irrelevant here. *See Lickiss*, 208 Cal. App. 4th at 1130-31 (fact-specific claim for expungement); *Bridge*, 2012 WL 3249508, at *2-3 (same); *Reinking*, No. A-11-CA-813-SS, at p. 3 (same).

Mr. Doe also cites *Bridge* and *Reinking* to argue that "[s]everal courts have held that expungement is proper where the disclosures ... have no 'regulatory value.'" Dkt. 17 at 7 (citing *Bridge*, 2012 WL 3249508, at *3-4; *Reinking*, No. A-11-CA-813-SS, at p. 12). But as noted above, these cases were fact-specific, which allowed the courts to examine whether the disclosures lacked "regulatory value." Here, due to Mr. Doe's desire to remain anonymous, there is no way for FINRA or this Court to determine whether, as Mr. Doe claims, the disclosures on his BrokerCheck report should be expunged.

---

[4] Furthermore, the court in *Lickiss* denied the petitioner's request for expungement, noting "[t]here are strong reasons for these repeated claims of serious misconduct to remain part of the public record" and that "[t]he public interest is best served when investors and regulators have complete access to accurate information regarding the professional history of registered representatives." *Lickiss v. FINRA*, No. N11-0457 (Cal. Super. 2013) at 3 (attached for the Court's convenience as Exhibit A).

## III. CONCLUSION

For the foregoing reasons, FINRA requests that this Court dismiss the Complaint with prejudice, and award such other and further relief as the Court deems appropriate.

DATED: November 4, 2013

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/*Ethan D. Dettmer*
　　　Ethan D. Dettmer

Attorneys for
FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC.

**EXHIBIT A**

**FILED**

OCT 21 2013

K. TORRE, CLERK OF THE COURT
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA - MARTINEZ
BY_____
DEPUTY CLERK

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF CONTRA COSTA

EDWIN E. "MIKE" LICKISS,
Petitioner,

v.

FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,
Respondent.

CASE NO. N11-0457

DECISION

This matter having been tried on July 22, 2013 and having considered all of the testimony and evidence and briefings presented, and the matter having been tried in less than 8 hours and no Statement of Decision having been requested prior to the matter being submitted, the court hereby issues the following decision after trial.

The matter was tried solely as an equitable action. The Court of Appeal in the August 23, 2012 opinion in this matter described the equitable power of the court as follows:

00012

EXHIBIT A

"Our Supreme Court reminds us that courts cannot properly exercise equitable powers without considering the equities on both sides of a dispute. (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 180 [96 Cal. Rptr. 2d 518, 999 P.2d 706].) This basic principle of equity jurisprudence means that in any given context in which the court is prevailed upon to exercise its equitable powers, it should weigh the competing equities bearing on the issue at hand and then grant or deny relief based on the overall balance of these equities. (*Ibid.*)" Lickiss v. Financial Industry Regulatory Authority (2012) 208 CA4th 1125, 1133

The Appellate Court went on to approvingly cite a Minnesota case, State v. Ambaye (2000) 616 N.W.2d 256, 261, for the rule that with respect to public records, "expungement is proper where the benefits to the petitioner outweigh the disadvantages to the public and the burden on the court." at pg. 1134.

Based on the evidence presented at trial, the equities do not weigh in Petitioner's favor. The records that he seeks to expunge involve BrokerCheck reports related to 17 separate arbitration claims filed over a 5 year period from 1991 to 1996 by 17 different clients of Petitioner. The total damage alleged in these 17 claims was approximately $1,500,000. All of the claims involved serious allegations of egregious misconduct by Petitioner while serving in the capacity as a trusted advisor. These 17 separate clients raised repeated claims of misrepresentation, breach of fiduciary duty, violation of federal and state security laws, omission of facts, and churning. 10 of the claims include direct allegations of fraud.

Two of these claims, both of which involved direct allegations of fraud, went to hearing before an arbitration panel. The panel received and weighed evidence on the claims against Petitioner. Both panels found against Petitioner and awarded damages of approximately $140,000. The 15 remaining claims were eventually settled, with total payments to investors of over $800,000.

There are strong reasons for these repeated claims of serious misconduct to remain part of the public record. The public interest is best served when investors and regulators have complete access to accurate information regarding the professional history of registered representatives. The importance of this system is described by Laurence S. Schultz, President of the Public Investors Arbitration Bar Association, in Respondent's exhibit 7, as follows:

> "The CRD system provides the underpinning of FINRA's BrokerCheck system. As such, it is used by public investors who desire to obtain information about their broker, or about a broker to whom they are considering entrusting their life's savings. Self-regulatory organizations and state regulators utilize the system in carrying out their regulatory functions.... The accuracy and integrity of the system are of utmost importance to the public." Pg.2

Petitioner does not assert that these arbitration awards were wrongly decided or that the claims against him in the cases that were settled were false or in error. He points first to the age of the complaints as being

00014

grounds to expunge. While it is commendable that Petitioner has not done anything to generate another negative report since 1996, it does not change the fact that at one point in his life he was capable of committing multiple acts of serious professional fraud and misconduct. While it was clear from Petitioner's testimony that this conduct is the source of great personal shame and embarrassment for him, the public, brokers and regulators still have a real need to know that they occurred.

Petitioner points to the fact that all but one of the claims against him arose from his involvement with the sale of a single product, CET stock. This fact does not tip the equities in Petitioner's favor. Although all of these claims may have involved the same product, each of the separate investors suffered significant injury as a result of Petitioner's separate acts of fraud and misconduct.

Petitioner also presented evidence that many of the claims against him were generated by a single registered representative, Richard Sacks, who also has a disciplinary history. This fact was of little import to the court in reaching a decision. The substance of the complaints and the findings of misconduct against the Petitioner are what are important to balancing the equities in this case, not the vessel for raising the claims. Petitioner similarly attempted to minimize his culpability regarding the JM matter in which he wrongfully purchased a note without authority, resulting in discipline and his being voluntarily terminated from his job. There he claimed he was "set up" to justify the need for expungement.

1  Instead, it illustrates that Petitioner still may not accept the seriousness of
2  his misdeeds.
3
4      Based on the foregoing analysis, the court finds that the equities in
5  this case strongly weigh in against expungement. The petition to expunge
6  is denied. Respondent is ordered to prepare judgment consistent with this
7  decision.

Dated: October 18, 2013

*[signature]*

Steven K. Austin
Judge of the Superior Court